## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JULIE PAQUIN and SCOTT HAEBERLIN,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | **Civil Action File No.** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF ATLANTA, a municipal** | : | **Jury Trial Demanded** |
| **corporation of the State of Georgia;** | : | |
| **and KEYETTA HOLMES,** | : | |
| **Director, Office of Zoning and** | : | |
| **Development,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## COMPLAINT

**COME NOW** Plaintiff, Julie Paquin ("Paquin"), and Plaintiff, Scott

Haeberlin ("Haeberlin"), (Paquin and Haeberlin collectively referred to herein as

"Plaintiffs"), by and through counsel undersigned, and hereby submit their

Complaint against Defendant, City of Atlanta ("the City"), and Defendant, Keyetta

Holmes ("Holmes"), (the City and Holmes collectively referred to herein as

"Defendants"), based on the following allegations:

- 1 -

## Federal Law

### 1.

These causes of action arise under the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), seeking a remedy for discrimination and retaliation; 42 U.S.C. §§ 1981 and 1983, *et seq.*, seeking remedies for race discrimination and retaliation; and, under the provisions of the Equal Pay Act of 1963 (Pub. L. 88-38), as amended ("EPA"), seeking a remedy for discrimination, all of which occurred during the course of Plaintiffs' employment with and termination by Defendants.

## Parties, Jurisdiction and Venue

### 2.

Plaintiffs are residents of the State of Georgia and of the Northern District of Georgia.

### 3.

The City is a municipal corporation of the State of Georgia, with its principal office address located at 55 Trinity Avenue, Atlanta, Georgia 30303. The City may be served at City of Atlanta, Department of Law, 55 Trinity Avenue, Suite 5000, Atlanta, Georgia 30303. Holmes, the Director, Office of Zoning and Development for the City, may be served at the same address.

**4.**

The jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1337.

**5.**

Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district as Defendant is a municipal corporation existing within the Northern District of Georgia.

**6.**

All jurisdictional prerequisites to the institution of Plaintiffs' suit under Title VII have been fulfilled.  Plaintiffs filed their initial Charges within 180 days of the discriminatory acts; Plaintiffs were issued Notices of Right to Sue from the EEOC; and, Plaintiffs now file their Complaint within 90 days of receipt of the Notices. Paquin's Charge of Discrimination is attached hereto as **Exhibit A**, and Haeberlin's Charge of Discrimination is attached hereto as **Exhibit B**.

**Factual Allegations**

**Julie Paquin:**

**7.**

Paquin, a White female, began her employment with the City in October of 2017 in the Department of City Planning, Office of Zoning and Development. Paquin's title was Plan Review Specialist, Sr.

**8.**

During Paquin's tenure, her work performance was exemplary. She was never warned, disciplined or written up for any reason.

**9.**

Two Black, female supervisors, Tamaria Letang ("Letang") and Nicole Mitchell ("Mitchell"), persistently, openly, and often talked about "Black women in power," the "Black Mayor of Atlanta," "Black girl power," and, in general, let it be known that they admired, supported and desired Black employees and/or new hires.

**10.**

More than once, Letang, told Paquin that she hoped Paquin would date a "brother" (a Black man). Letang also referred to Paquin as "prissy" and "Barbie" (as a Barbie Doll). Also, some of Paquin's coworkers, in the presence of Letang and/or Mitchell, referred to Paquin as "little White girl."

**11.**

On September 11, 2019, despite Paquin's excellent work performance, Paquin was terminated by the Interim Director, Holmes, (also a Black female).  When Paquin asked why she was being terminated, she was told that the City was an "at will" employer and could terminate Paquin with or without cause.

**12.**

Paquin was completely stunned, as during her tenure, there had been multiple Black employees in the Department who had been written up in accordance with the City's policies, but had not been terminated.  Plaintiff could not understand why she, an excellent employee, who had never been written up or involved in any work-related, negative issues of any kind, would be terminated "at will."  Paquin had not broken any company rules, nor had she acted in any manner to warrant termination.

**13.**

Upon information and belief, Paquin was replaced by a Black female.

**<u>Scott Haeberlin</u>:**

**14.**

Haeberlin, a White, gay male, began his employment with the City in July of 2014 in the Office of Buildings as a Zoning Inspector.  Subsequently, Haeberlin was promoted to Plan Review Specialist, Sr. ("PRSS").  Haeberlin, and others, were

transferred to the Office of Zoning and Development, where Tamaria Letang, a Black female, was appointed as Haeberlin's supervisor.

## 15.

Excluding Haeberlin and one White female, all PRSS's were Black.

## 16.

During Haeberlin's tenure, he was never warned, disciplined or written up for any reason.

## 17.

Letang and Mitchell, persistently, openly, and often talked about "Black women in power," the "Black Mayor of Atlanta," "Black girl power," and, in general, let it be known that they admired, supported and desired Black employees and/or new hirees.

## 18.

Letang often screamed and ranted at Haeberlin, and others, about President Donald Trump because, she said, Trump did not support Black Lives Matter.  She also believed that Haeberlin was a Republican and Letang made it clear that she did not approve of Trump supporters, negatively referring to them as "those people."

**19.**

Most employees in the Department were Black, and many of the Black females in the Department were alumnae of the same sorority. They, and apparently Letang, attended the same Baptist church.

**20.**

Letang knew that Haeberlin had attended Catholic schools, and that Haeberlin was, in fact, a Catholic. Letang would often make the statement to Haeberlin, or where he and others could easily hear, that "Catholics think they are in a religion, but they are not."

**21.**

At one point, while Letang was discussing a promotion she felt she should and would obtain, Haeberlin disagreed. In response, Letang then made a "limp wrist" hand gesture toward Haeberlin, derogatorily referencing his sexual orientation.

**22.**

On more than one occasion, first via email, and then in person, Haeberlin complained to the City's Human Resources Department ("HR") regarding Letang. Haeberlin was told that HR would investigate and asked Haeberlin to indicate his accusations in writing. Haeberlin complied, but to his knowledge, nothing was ever

done about his complaints regarding Letang, and Letang's treatment of Haeberlin did not change/improve.  Eventually, Haeberlin was given a different supervisor.

**23.**

Despite the fact that Haeberlin had more experience than the other PRSS's, and in most instances, more education (Haeberlin has a master's degree in public administration), Plaintiff was paid approximately $2,000.00 less per year than at least two of his peers.

**24.**

On September 11, 2019, Haeberlin was terminated "at will" i.e., without cause, by the Interim Director, Holmes (also a Black female).  Prior to that date, Haeberlin had never been written up or disciplined.  However, Haeberlin was aware that multiple Black employees had previously been written up in accordance with the City's policies, but had not been terminated.

**25.**

Prior to his termination, Haeberlin was told by his supervisors that he was not promoted because he "could not get along with Black people."

**26.**

Upon information and belief, Haeberlin was replaced by a Black female.

## COUNT I
### (Race, Color and Sex Discrimination with Retaliation –
### Title VII – As to Paquin and Haeberlin)

**27.**

Plaintiffs incorporate by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**28.**

Letang and/or Mitchell voiced a hiring/employee preference for Black employees, and Black females, in particular, over employees who lacked the race, color and sex Letang and Mitchell deemed more desirable.

**29.**

This illegal hiring/employee preference is established by the direct evidence from Defendants and their agents, Letang and Mitchell, believing, indeed loudly announcing over and over again, their hiring/employee preference for Blacks, and Black females, in particular.

**30.**

This illegal hiring/employee preference created a negative impact on and treatment toward Plaintiffs, and/or other White employees, in violation of federal law.

**31.**

The White Plaintiffs were selected for termination despite their exemplary work performance, even though Black employees, who had previously been written up, had not been terminated, despite their poor work performances.

**32.**

Title VII makes it an unlawful employment practice for an employer such as the City:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) (2) to limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. See 42 U.S.C. § 2000e-2(a)(1)&(2) (emphasis added.)

**33.**

Title VII further states that an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national

origin was a motivating factor for any employment practice, even though other factors also motivated the practice. *See* 42 U.S.C. § 2000e-2(m).

**34.**

Defendants' treatment of Plaintiffs was motivated by and because of Plaintiffs' race, color, and sex, which is employment discrimination.

**35.**

At the time of the discriminatory acts alleged, Defendants knew or should have known that the means utilized to discriminate and retaliate against Plaintiffs was forbidden by law.

**36.**

Defendants willfully, wantonly, and intentionally violated these provisions of Title VII, in reckless and callous disregard of Plaintiffs' federally protected rights.

<u>**COUNT II**</u>
**(Religion Discrimination and Retaliation –
Title VII – As to Haeberlin)**

**37.**

Haeberlin incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**38.**

Letang and Mitchell voiced a hiring/employee preference for Black employees, and Black females, in particular, over employees who lacked the race, color, sex and religion Letang and Mitchell deemed more desirable.

**39.**

This illegal hiring/employee preference is established by direct evidence from Defendants and their agents, Letang and Mitchell, believing, indeed loudly announcing over and over again, their hiring/employee preference for Blacks, and Black females, in particular.

**40.**

This illegal hiring/employee preference created a negative impact and treatment toward Haeberlin, and/or any other White, male employee, in violation of federal law.

**41.**

Haeberlin, a White, gay male, was selected for termination without cause, even though many Black employees had previously not been terminated, but were instead simply written up in accordance with the City's policies.

**42.**

Title VII makes it an unlawful employment practice for an employer such as

the City:

> (1) to fail or refuse to hire or to discharge any individual, <u>or otherwise to discriminate against any individual with respect to his compensation</u>, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or <u>tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex,</u> or national origin. See 42 U.S.C. § 2000e-2(a)(1) & (2) (emphasis added.)

**43.**

Title VII further states that an unlawful employment practice is established

when the complaining party demonstrates that race, color, religion, sex, or national

origin was a motivating factor for any employment practice, even though other

factors also motivated the practice. *See* 42 U.S.C. § 2000e-2(m).

**44.**

Defendants' treatment and ultimate termination of Haeberlin was motivated by and because of Haeberlin's race, color, sex and religion, which is employment discrimination.

**45.**

At the time of the discriminatory acts alleged, Defendants knew or should have known that the means utilized to discriminate and retaliate against Haeberlin were forbidden by law.

**46.**

Defendants willfully, wantonly, and intentionally violated these provisions of Title VII, in reckless and callous disregard of Haeberlin's federally protected rights.

## COUNT III
**(Wage Discrimination – EPA – As to Haeberlin)**

**47.**

Haeberlin incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**48.**

Although Haeberlin had more experience and more education than many or most of his peers, Haeberlin was paid less than the other PRSS's with identical job titles and descriptions.

**49.**

Defendants, and/or their agents, were Haeberlin's employer within the meaning of the EPA as they were involved in the day-to-day operation of the Department and had direct responsibility for supervising Haeberlin.

**50.**

Defendants discriminated against Haeberlin by creating a disparity in his annual salary as compared to the annual salaries of the other PRSS's, despite Haeberlin having more experience and/or education.

**51.**

Defendants discriminated against Haeberlin on the basis of wage disparity, in violation of the EPA.

**52.**

The above described wage discrimination placed stress and humiliation on Haeberlin not endured by other employees in his peer group.

**53.**

At the time of the discriminatory acts alleged, Defendants knew or should have known that the means utilized to discriminate against Haeberlin were forbidden by law.

**54.**

Defendants willfully, wantonly, and intentionally violated the EPA in reckless and callous disregard of Haeberlin's federally protected rights.

**COUNT IV**
**(42 U.S.C. § 1983: Violation of Substantive Rights**
**Guaranteed by 42 U.S.C. §§ 1981, *et seq.* - As to Paquin and Haeberlin)**

**55.**

Plaintiffs incorporate by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**56.**

Defendants discriminated against Plaintiffs in violation of 42 U.S.C. §§ 1981 and 1983, *et seq.,* by denying Plaintiffs the same contractual rights to employment as enjoyed by Black employees of Defendants.

**57.**

Defendants further discriminated against Plaintiffs in violation of 42 U.S.C. §§ 1981 and 1983, *et seq.,* by denying Plaintiffs the equal benefits as those enjoyed by Black employees of Defendants.

**58.**

Acting through their officers and supervisors, Defendants engaged in the race discrimination described in this Complaint intentionally or with reckless

indifference to the rights of Plaintiffs.  Defendants' actions were done deliberately and with forethought to punish and discriminate against the Plaintiffs and were done with callous and/or reckless indifference to Plaintiffs' federally protected rights.

**59.**

Defendants' racially discriminatory acts and omissions caused the Plaintiffs to suffer tangible job detriments, as well as mental anguish and personal humiliation, for which they seek damages in an amount to be determined at trial.

**60.**

Defendants' discrimination was willful and intentional and has directly caused Plaintiffs' damages, further entitling them to an award of costs and attorney's fees, in an amount to be determined at trial.

**COUNT V**
**(42 U.S.C. § 1983: Violation of Substantive Rights Guaranteed by the Equal Protection Clause of the 14th Amendment – As to Paquin and Haeberlin)**

**61.**

Plaintiffs incorporate by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**62.**

Defendants violated Plaintiffs' federal rights protected by the federal constitution and federal statutes and regulations under color of state law, ordinance regulation, custom or usage in violation of 42 U.S.C. § 1983.

**63.**

The conduct of Defendants in terminating or failing to promote Plaintiffs based upon their race is in violation of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**64.**

This violation of rights was proximately caused by Defendants who were acting under color of state law and local ordinances, regulations, customs and usages in violation of 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiffs respectfully pray for judgment against the Defendants, as follows:

(a)    That Defendants be ordered to formulate, distribute and implement written policies which do not discriminate in any manner which are violations of Title VII,  42 U.S.C. §§ 1981 and 1983, *et seq*.,, or the EPA;

(b)     That Defendants be ordered to rehire Plaintiffs into their former positions, or positions substantially similar to those held prior to their discharge, with full salaries, seniority, and benefits running from their date of discharge;

(c)     That Defendants be ordered to compensate, reimburse, and make whole the Plaintiffs for all the benefits they would have received had it not been for Defendants' illegal actions, including but not limited to pay, benefits, insurance costs, bonuses, raises, training, promotions, and seniority.   Plaintiffs should be accorded these illegally withheld benefits from the date Plaintiffs were discharged until the date Defendants tender substantially equivalent employment, with interest, on the above withheld amounts, to the date of payment;

(d)     That Plaintiffs be awarded compensatory damages and punitive damages to compensate for the humiliation, pain, suffering and stigma associated with race, color, sex and/or religion based discrimination;

(e)     That Haeberlin recover liquidated damages for Defendants' willful violations of the EPA;

(f)     That Plaintiffs recover prejudgment interest;

(g)    That Plaintiffs recover costs and expenses of litigation including an

award of reasonable attorney's fees;

(h)    That the Court issue a declaratory judgment that the practices

complained of are unlawful and void; and

(i)    For such other and further relief as this Court deems just and proper.

### Jury Demand

Plaintiffs herein demand a trial by jury of all issues in this action.

Dated this 16th day of March 2021.

**PANKEY & HORLOCK, LLC**


By:    /s/ *Larry A. Pankey*
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone:  770-670-6250
Facsimile:   770-670-6249
LPankey@PankeyHorlock.com

- 20 -

## <u>CERTIFICATION OF FONT SIZE</u>

Pursuant to Local rule 5.1C of the Local Rules of the United States District Court for the Northern District of Georgia, I, Larry A. Pankey, of Pankey & Horlock, LLC, attorney for Plaintiffs, Julie Paquin and Scott Haeberlin, hereby certify that the foregoing **Complaint** is typewritten in MS Word using Times New Roman font, fourteen (14) point type.

Dated this 16th day of March 2021.

**PANKEY & HORLOCK, LLC**


By:     /s/ *Larry A. Pankey*_____
        Larry A. Pankey
        Georgia Bar No. 560725
        ***Attorneys for Plaintiff***